IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GERALD and COTENA ALEXANDER, | |
| **Plaintiffs,** | |
| v. | **1:13-cv-2426-WSD** |
| ALLSTATE INSURANCE COMPANY, | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Allstate Insurance Company's ("Allstate" or "Defendant") Motion for Summary Judgment [15].

## I.    BACKGROUND

This is an insurance coverage dispute in which Plaintiffs Gerald Alexander ("Mr. Alexander") and Cotena Alexander ("Mrs. Alexander") (together, "Plaintiffs" or the "Alexanders") seek coverage, under an insurance policy issued by Allstate, for the alleged theft of 2004 BMW automobile.  Allstate denied Plaintiffs' insurance claim, including because Plaintiffs failed comply with the policy's requirement that they submit to an examination under oath.  Allstate asserts that it is entitled to summary judgment because Plaintiffs' claims in this

action are barred by the policy's one-year limitation period for bringing suit

against Allstate.  Plaintiffs argue that there is a genuine issue of material fact

whether Allstate waived the one-year limitation period because, they assert,

Allstate took actions indicating its intention to pay their claim without litigation,

Plaintiffs received Allstate's letter denying coverage after the expiration of the

limitation period, and Plaintiffs were lulled into believing that Allstate would not

insist upon strict compliance with the policy, including the limitation period.

A.    Facts

On January 29, 2011, Allstate issued to Plaintiffs an "Allstate Fire and

Casualty Insurance Company Auto Policy" (the "Policy") for the policy period of

January 29, 2011 to July 29, 2011.  (Policy [15.1, 15.2]).  The Policy provides

coverage for Plaintiffs' 2004 silver BMW 745i (the "Vehicle") against, among

others, "loss . . . caused by theft or larceny."  ([15.2] at 12).  The Policy provides:

**What You Must Do If There Is A Loss**
1.  As soon as possible, any person making claim must give [Allstate]
    written proof of loss, including all details reasonably required by
    [Allstate]. . . . [Allstate] may also require that person to submit to
    examinations under oath.

(Id. at 17).  The Policy also states:

**Action Against Us**
No one may bring an action against [Allstate] in any way related to
the existence or amount of coverage, or the amount of loss for which
coverage is sought, under **Part IV—Protection Against Loss to The**

2

> **[Vehicle]**, unless there is full compliance with all policy terms and
> such action is commenced within one year after the date of loss.

(Id. at 16-17).

On July 13, 2011, Plaintiffs noticed that the Vehicle was missing from their home. (Alexander Affs. [16.3, 16.4] at ¶ 4).[1]  Plaintiffs "immediately" filed a police report[2] and notified Allstate that the Vehicle had been stolen.  (Id. ¶ 5). Allstate began its investigation into Plaintiffs' claim seeking coverage under the Policy for the theft of the Vehicle (the "Claim").

On November 1, 2011, Allstate sent a letter to Mr. Alexander and a separate letter to Mrs. Alexander.  (Nov. 1, 2011, Letters [15.3 at 4-7]).  The letters request, pursuant to the terms of the Policy, that Plaintiffs appear on November 17, 2011, for an Examination Under Oath ("Examination") and they bring with them certain documents related to their Claim.  The letters state further that Allstate "does not waive any terms or provisions or conditions or forfeiture of the [Policy], but demands and shall conduct the Examination reserving all of its rights."  (Id.).

Plaintiffs did not appear for their November 17, 2011, Examinations.  On December 15, 2011, Allstate sent another letter to Plaintiffs, which states:

---

[1]      Plaintiffs submit the Affidavit of Gerald Alexander [16.3] and the Affidavit of Cotena Alexander [16.4].  Because they are identical, the Court refers to them as the "Alexander Affidavits."

[2]      Mrs. Alexander is identified in the police report as Cotena Carothers. ([16.7] at 2).

3

With respect to the automobile loss which occurred on July 13, 2011, involving your [Vehicle], which was reported, stolen . . . you are now advised [Allstate] reserves all rights and defenses which it has in conjunction with [the Policy].  We further notify you that any activity on our part by way of investigation, damage determination, or emergency advance payments to you, does not constitute a waiver of our rights.

We are reserving our right to later deny our coverage obligation under the [P]olicy and assert a defense of no coverage because [the Policy] requires that any person making claim must give [Allstate] a written proof of loss, including all details reasonably required by us.  You must also submit to an [Examination].  Specifically you failed to submit to [the Examinations] which were scheduled on Thursday, November 17, 2011 . . . .

Our investigation is continuing and we will avail ourselves of any other [P]olicy defenses that may arise.

(Dec. 15, 2011, Letter [15.3 at 8-9]).

On February 9, 2012, Allstate sent to Plaintiffs[3] an email, which states:

As part of its investigation [into Plaintiffs' Claim], Allstate has asked that this firm conduct [Examinations of Plaintiffs] per the terms of [the Policy] . . . .

As representative of [Plaintiffs], please provide several dates and times that you are available to proceed with the [Examinations] . . . .

Allstate reserves all rights relative to this claim.  In this regard, should correspondence or communication from Allstate be received which purports to waive any term, condition, or provision found in the [P]olicy or under Georgia law, including any correspondence or

---

[3]   Except for the July 10, 2012, Letter denying coverage for Plaintiffs' Claim, all correspondence on and after February 9, 2012, occurred between counsel for the parties.

communication which purports to represent the status of the claim or
which indicates that claim resolution will occur at some future date,
said correspondence or communication should be disregarded in its
entirety.  Allstate will continue to insist upon strict compliance with
policy terms, conditions, and provisions.

([15.4 at 4-5]).

On February 13, 2012, Allstate sent to Plaintiffs by email, facsimile, and

mail a letter identical to February 9, 2012, email, requesting Plaintiffs' availability

for their Examinations and stating that "Allstate reserves all rights relative to this

claim" and "will continue to insist upon strict compliance with policy terms,

conditions, and provisions."  ([15.4 at 8-10]).

On February 17, 2012, Allstate sent to Plaintiffs a letter, which states:

As part of its investigation [into Plaintiffs' Claim], Allstate has
asked that this firm conduct [Examinations of Plaintiffs] per the terms
of [the Policy] . . . .

Pursuant to our conversation today, the [Examinations] of Mr.
and Mrs. Alexander will proceed on Wednesday, March 7, 2012 . . . .

Allstate reserves all rights relative to this claim.  In this regard,
should correspondence or communication from Allstate be received
which purports to waive any term, condition, or provision found in the
[P]olicy or under Georgia law, including any correspondence or
communication which purports to represent the status of the claim or
which indicates that claim resolution will occur at some future date,
said correspondence or communication should be disregarded in its
entirety.  Allstate will continue to insist upon strict compliance with
policy terms, conditions, and provisions.

([15.4 at 11]).

On February 28, 2012, Allstate sent to Plaintiff another email, which states:

> As I stated in our phone conversation on February 20th, the Examinations [] must be taken during normal business hours.  If it is more convenient for your clients, we can schedule it to begin at any time on or in between 9:00 a.m. through 1:00 p.m.  Additionally, Allstate will further attempt to accommodate [Plaintiffs] by moving the date of the Examinations [] to a more convenient date if they would prefer, however the same business hour restriction will apply.
>
> As previously indicated, Allstate reserves all rights relative to this claim.  In this regard, should correspondence or communication from Allstate be received which purports to waive any term, condition, or provision found in the [P]olicy or under Georgia law, including any correspondence or communication which purports to represent the status of the claim or which indicates that claim resolution will occur at some future date, said correspondence or communication should be disregarded in its entirety.  Allstate will continue to insist upon strict compliance with policy terms, conditions, and provisions.
>
> Please notify me of another date that is more convenient and/or if [Plaintiffs] would like to change the start time of the [Examinations] . . . . Otherwise, your email will serve as notice for cancellation of the Wednesday, March 7, 2012, 10:00 a.m. Examinations . . . .

([15.4 at 12-13]).

Plaintiffs did not appear for their March 7, 2012, Examinations.  On

April 12, 2012, Allstate sent to Plaintiffs by email a letter, which states:

> Despite the several attempts that Allstate and I have made to schedule the Examinations [] of Mr. and Mrs. Alexander at a mutually convenient time and date, it has been to no avail.  Therefore, the Examinations [] of Mr. and Mrs. Alexander is set to proceed on Tuesday, May 8, 2012 . . . .

Allstate reserves all rights relative to this claim.  In this regard, should correspondence or communication from Allstate be received which purports to waive any term, condition, or provision found in the [P]olicy or under Georgia law, including any correspondence or communication which purports to represent the status of the claim or which indicates that claim resolution will occur at some future date, said correspondence or communication should be disregarded in its entirety.  Allstate will continue to insist upon strict compliance with policy terms, conditions, and provisions.

([15.4 at 14-16]).

On April 19, 2012, Allstate sent to Plaintiffs an email, which states:

I received your voicemail this afternoon concerning Mrs. Alexander's scheduled Cesarean section on May 3, 2012.  At your earliest convenience, please provide a doctor's note or certifiable source confirming the scheduled Cesarean section for Mrs. Alexander for May 3, 2012, that is dated and can provide a time frame for her recovery.

As previously indicated, Allstate reserves all rights relative to this claim.  In this regard, should correspondence or communication from Allstate be received which purports to waive any term, condition, or provision found in the [P]olicy or under Georgia law, including any correspondence or communication which purports to represent the status of the claim or which indicates that claim resolution will occur at some future date, said correspondence or communication should be disregarded in its entirety.  Allstate will continue to insist upon strict compliance with policy terms, conditions, and provisions.

([15.4 at 17]).

On April 26, 2012, Allstate sent to Plaintiffs an email, which states:

I sent you an email a week ago concerning Mrs. Alexander's scheduled Cesarean section on May 3, 2012.  Again, please provide a doctor's note or certifiable source confirming the scheduled Cesarean

section for Mrs. Alexander for May 3, 2012 that is dated and can
provide a time frame for her recovery.

As previously indicated, Allstate reserves all rights relative to this
claim.  In this regard, should correspondence or communication from
Allstate be received which purports to waive any term, condition, or
provision found in the [P]olicy or under Georgia law, including any
correspondence or communication which purports to represent the
status of the claim or which indicates that claim resolution will occur
at some future date, said correspondence or communication should be
disregarded in its entirety.  Allstate will continue to insist upon strict
compliance with policy terms, conditions, and provisions.

([15.4 at 18]).

On April 27, 2012, Mrs. Alexander gave birth to her son and was

ordered to bed rest.  (Pls' Ex. C & D [16.5, 16.6]).

There is no evidence in the record that the parties had any further

communications, or took any action regarding Plaintiffs' Claim, after the

April 26, 2012, email.  On July 10, 2012, Allstate sent to Plaintiffs a letter denying

their Claim.  The July 10, 2012, Letter states:

Allstate has been attempting to investigate the [Claim].  This effort
has included demanding that you submit claim forms as required by
the terms of the [Policy] and included an effort to question both of
you under oath as provided for by the [Policy].  After receiving notice
of [the C]laim, Allstate repeatedly attempted to schedule your
Examinations [] for a mutually convenient date, time and location.
However, Allstate was unsuccessful in that endeavor.  Thus, Allstate
scheduled your Examinations [] for a date, time and location certain
and provided written notice to you of that scheduling.  In violation of
the terms of the [Policy], neither of you appeared for your
Examinations [] at the scheduled time.

I must respectfully inform you that your [C]laim is denied in its entirety by Allstate.  Please understand that going forward Allstate will assert all defenses to coverage supported by the facts and the laws of the State of Georgia.  This denial was made necessary by your failure to perform your obligations under the [Policy].  Specifically, you failed to attend the scheduled [Examinations] as scheduled by counsel on November 17, 2011, January 5, 2012 [sic], and finally May 8, 2012. . . .

Your material breach of the [Policy] prevents any payment in this matter.  For the reasons set forth in this letter, Allstate has decided that there is no coverage for your [Claim].  Should you disagree with Allstate's decision, please review the terms of the [Policy] carefully and govern yourselves accordingly. . . .

As previously indicated, Allstate reserves all rights relative to this claim.  In this regard, should you receive correspondence or communication from Allstate which purports to waive any term, condition, or provision found in the [P]olicy or under Georgia law, including any correspondence or communication which purports to represent the status of the claim or which indicates that claim resolution will occur at some future date, said correspondence or communication should be disregarded in its entirety as it will be the result of a clerical error.  Allstate will continue to insist upon strict compliance with policy terms, conditions, and provisions.

([15.3 at 12-13]).

B.    Procedural History

On June 6, 2013, Plaintiffs filed their Complaint in the Superior Court of

Fulton County, Georgia,[4] asserting claims against Allstate for breach of contract,

bad faith and unfair claim settlement practices.  (Compl. [1.1]).  Plaintiffs assert

---

[4]       No. 2013CV232259.

that they "paid all premiums due under the Policy, submitted all proofs of loss required under the Policy, and performed all other conditions the Policy required them to perform," and that Allstate breached the Policy by failing to pay Plaintiffs' Claim. (Id. at 7). Plaintiffs contend that Allstate acted unreasonably in denying their Claim, including because Allstate "told the police that [P]laintiffs had conspired with one another to cause said auto theft so that they might fraudulently obtain insurance proceeds from their respective insurers" and Allstate's "claim adjuster made these accusations for the purpose of denying plaintiffs [sic] claim knowing that [P]laintiffs would not appear for an examination under oath while criminal charges were pending against them." (Id. at 8-9). Plaintiffs seek "$136,125.00, including $26,125.00 in policy proceeds, $10,000.00 representing plaintiffs [sic] lost equity in the vehicle, and $100,000.00 for emotional distress," and attorney's fees and costs. (Id. at 13-14).

On July 22, 2013, Allstate removed the Fulton County action to this Court based on diversity of citizenship jurisdiction. (Notice of Removal [1]).

On January 17, 2014, Allstate moved for summary judgment on the ground that the Policy's one-year limitation period for bringing an action against Allstate bars Plaintiffs' claims in this action.

In their Response, Plaintiffs claim that there is a genuine issue of material fact whether Allstate waived the one-year limitation period because, they assert, Allstate took actions indicating its intention to pay their Claim without suit, Plaintiffs received Allstate's letter denying coverage after the expiration of the limitation period, and Plaintiffs were lulled into believing that Allstate would not insist upon strict compliance with the Policy, including the limitation period.

## II.    DISCUSSION

### A.    Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this

burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Analysis

Under the terms of the Policy, an action against Allstate for coverage resulting from the theft of the Vehicle must be "commenced within one year after

the date of loss." ([15.2 at 16-17]).  Plaintiffs filed their Complaint on June 6, 2013, almost two (2) years after the July 13, 2011, theft of the Vehicle, and it is undisputed that Plaintiffs' Complaint is thus untimely.  Plaintiffs argue, however, that Allstate waived the one-year limitation period in the Policy.

"Although a policy provision requiring that an action be commenced within one year of the insured loss is valid, it can be waived 'where the [insurer] leads the insured by its actions to rely on its promise to pay, express or implied.'" Balboa Life and Cas., LLC v. Home Builders Fin., Inc., 697 S.E.2d 240, 244 (Ga. Ct. App. 2010) (quoting Auto–Owners Ins. Co. v. Ogden, 569 S.E.2d 833, 835 (2002)).  "If the insurer never denied liability, but continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit, whether or not this lulled the insured into a belief that the 12–month clause in the contract was waived by the insurer can become a disputed question of fact." Ogden, 569 S.E.2d 833.  Georgia law is clear, however, that

> Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy:
>
> (1)  Acknowledgement of the receipt of notice of loss or claim under the policy; [or]
>
> . . .

(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any loss or claim.

O.C.G.A. § 33-24-40.

Plaintiffs argue that Allstate waived its right to enforce the one-year limitation period in the Policy because Allstate led them to believe that it would not insist upon strict compliance with the Policy, including the limitation period. The Court disagrees.

In their identical affidavits, Plaintiffs assert that Allstate "reasonable [sic] led my spouse and I that [sic] strict compliance with the one year limitation provision would not be insisted upon" and "[m]y spouse and I were lulled into a belief that the limitation for filling [sic] suit was waived." (Alexander Affs. at ¶¶ 6, 9). Plaintiffs fail to provide any factual support for their conclusory assertions, and the record is that Allstate repeatedly and unequivocally stated that it was not waiving compliance with any terms of the Policy. From November 1, 2011, to April 26, 2012, Allstate informed Plaintiffs, in writing, at least nine (9) times, that Allstate was not waiving compliance with any terms of the Policy, that Allstate reserved all of its rights and defenses under the Policy, and that it would "continue to insist upon strict compliance with [P]olicy terms, conditions and provisions." (See Communications of Nov. 1, 2011; Dec. 15, 2011; Feb. 9, 13, 17, and 28, 2012; Apr. 12, 19, and 26, 2012 [15.3 at 4-13; 15.4 at 4-18]). Plaintiffs

14

have not identified, and the record does not show, any action by Allstate that could have led Plaintiffs to believe that Allstate would not insist upon strict compliance with the Policy or that it waived the one-year limitation period.[5]

Plaintiffs next argue that Allstate waived the one-year limitation period because Allstate knew that Plaintiffs were not available for their Examinations because of Mrs. Alexander's pregnancy and Allstate "led the Alexanders to believe that once Mrs. Alexander's health had returned they would schedule the Examinations."  (Pls' Resp. [16] at 6).  The record is that Allstate asked Plaintiffs to provide their availability for their Examinations; that Plaintiffs failed to appear for Examinations scheduled on November 17, 2011, March 7, 2012, and May 8, 2012; and that Allstate twice requested that Plaintiffs "provide a time frame for [Mrs. Alexander's] recovery" from the birth of her child, which occurred on April 27, 2012.  There is no evidence to suggest that Plaintiffs replied to Allstate's requests or that Allstate agreed to postpone Plaintiffs' Examinations, including to a date beyond the one-year limitation period, such that Plaintiffs could have reasonably believed that Allstate did not intend to enforce the one-year limitation

---

[5]      That Plaintiffs did not file their action for almost a year after they were told their claim had been denied discredits their assertion that they were lulled into believing that the one-year limitation period did not apply.

period in the Policy.[6]  Compare Appleby v. Merastar Ins. Co., 477 S.E.2d 887, 888

(Ga. Ct. App. 1996) (genuine issue of material fact existed whether insurer waived

policy limitation period where insured's counsel testified in affidavit that insurer

agreed to conduct examination of insured after expiration of the limitation period).[7]

Plaintiffs next argue that Allstate waived the Policy's limitation period

because they "provided [Allstate] with documentation that led [P]laintiffs to

believe that they were in negotiations with [D]efendant to pay the claim," and they

did not receive Allstate's July 10, 2012, letter denying coverage until after the

one-year limitation period had expired on July 13, 2012.  (Pls' Resp. at 8-9).

Because Georgia law provides that an insurer's investigation of a claim does

not constitute waiver of its rights and defenses under an insurance policy, a waiver

---

[6]      Plaintiffs' allegation in their Complaint that Allstate "told the police that
[P]laintiffs had conspired with one another to cause said auto theft" "for the
purpose of denying plaintiffs [sic] claim knowing that [P]laintiffs would not appear
for an examination under oath while criminal charges were pending against them"
undercuts Plaintiffs' assertion in their Response that they did not appear for their
Examinations because of Mrs. Alexander's health.  (Compare Compl. at 9 and Pls'
Resp. at 7-8).

[7]      To the extent Plaintiffs contend that they believed that their Examinations
were "a mere formality condition precedent to [Allstate] paying the claim for their
loss," Allstate unequivocally stated in its December 15, 2011, Letter that it was
reserving its right to deny coverage including because the Policy required Plaintiffs
to submit to an examination under oath and Plaintiffs "failed to submit to
examinations under oath which were scheduled on Thursday, November 17, 2011."
(Dec. 15, 2011, Letter at 1).  On February 9, 13, and 17, 2012, Allstate again
informed Plaintiffs that it was demanding their Examinations as required under the
Policy and that Allstate was not waiving its rights or defenses under the Policy.

may occur "only where the insurer's conduct reasonably leads the insured to believe that strict compliance with the limitation provision would not be insisted on." Appleby, 477 S.E.2d at 888 (citing O.C.G.A. § 33-24-40; Brown v. Nationwide Ins. Co., 306 S.E.2d 62 (1983)).  Georgia courts thus have held that an insurer's investigation and continued correspondence with an insured up to, and after, expiration of a policy's limitation period, without more, is not sufficient to constitute a waiver of the policy's limitation period.  In Georgia Farm Bureau Mut. Ins. Co. v. Pawlowski, the court held that the insurer had not waived the one-year limitation period because the evidence showed only that the insurer had investigated the claim and offered a settlement that was rejected.  643 S.E.2d 239 (Ga. Ct. App. 2007).  Although the insurer ordered a test, the results of which supported the insureds' demand for a higher settlement amount, the insurer took no further action on the claim.  Id.  The court found that, even though it never explicitly denied liability, the insurer's failure to act on the test results was an implicit denial of liability for the greater amount the insureds sought.  Id.  In Carpenters Local Union No. 1977 v. General Ins. Co. of America, the court held that, even though coverage was denied after the one-year limitation period in the policy expired, the insurer did not waive the limitation provision where there was no evidence to support that the insurer ever admitted liability or wished to

17

negotiate, and the evidence "at most show[ed] only investigation by the insurer a little over a year after the loss and denial of liability within six weeks thereafter." 306 S.E.2d 383, 384 (Ga. Ct. App. 1983).

Here, there is no evidence to support that Plaintiffs and Allstate were engaged in negotiations to settle Plaintiffs' claim.  The correspondence between Allstate and Plaintiffs was merely part of Allstate's investigation—specifically, to schedule, and reschedule, the Examinations of Plaintiffs—and was not a discussion of Plaintiffs' claimed loss "with a view toward negotiation and settlement without the intervention of a suit."  See Ogden, 569 S.E.2d 833.  That Plaintiffs submitted the police report and loan account information for the Vehicle supports, at most, that they submitted the documents Allstate requested for its investigation.

Even if Plaintiffs and Allstate were engaged in negotiations—which they were not—that Plaintiffs received Allstate's letter denying their Claim after the one-year limitation period expired—even assuming it is true—without more, is not sufficient to create an issue of fact whether Allstate "lulled [Plaintiffs] into a belief that the limitation clause in the contract was waived by [Allstate]."  See Pawlowski, 643 S.E.2d at 241 ("[M]ere negotiation for settlement, unsuccessfully accomplished, is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute a waiver of the limitation defense."); see also

Carpenters Local, 306 S.E.2d at 384; Shelter Am. Corp. v. Ga. Farm Bureau Mut.

Ins. Co., 433 S.E.2d 140 (Ga. Ct. App. 1993) (insurer did not waive policy's one-

year limitation period, despite insured's claim that insurer unnecessarily delayed

negotiating and created confusion regarding value of property; insurer explicitly

stated 3 times during settlement negotiations, which continued beyond expiration

of limitation period, that no contractual provisions were waived); Johnson v. Ga.

Farm Bureau Mut. Ins. Co., 234 S.E.2d 693 (Ga. Ct. App. 1977) (where settlement

negotiations stopped 2 months before expiration of one-year limitation period, and

there was no evidence of continued effort to negotiate settlement, case was

"lacking in evidence of any affirmative promise, statement or other act . . . to lead

the plaintiff into believing that the defendant intended to enlarge on the limitation

period"); compare Balboa, 697 S.E.2d 240 (Ga. Ct. App. 2010) (issue of fact

existed as to whether insured was lulled into believing limitation period was

waived; there "was evidence that, up to the date the [insured] filed suit, the insurer

never denied liability *and* took actions (including issuing checks for payment)

which represented that it intended to pay the claim without suit.").

It is undisputed that Plaintiffs' Complaint, filed on June 6, 2013, is untimely

under the Policy's one-year limitation period for bringing an action against

Allstate.  The record is that Allstate repeatedly and unequivocally stated that it was

not waiving its rights under the Policy, and there is no evidence to support that

Allstate led Plaintiffs to believe that it would not insist on strict compliance with

the terms of the Policy, including the one-year filing requirement, or that Allstate

agreed to provide coverage for Plaintiffs' Claim.  The Court finds that Allstate did

not waive the one-year limitation period in the Policy and Allstate is entitled to

summary judgment in this action.[8]

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Allstate Insurance Company's Motion for

Summary Judgment [15] is **GRANTED.**


**SO ORDERED** this 19th day of August, 2014.



WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[8]      Allstate is entitled to summary judgment on Plaintiffs' claims for bad faith
and unfair claim settlement practices because they are based on Plaintiffs' breach
of contract claim and are also barred by the one-year limitation period in the
Policy.  See, e.g., Allstate Ins. Co. v. Sutton, 658 S.E.2d 909 (Ga. Ct. App. 2008)
(limitation period in policy barred insured's claims for breach of contract, bad faith
refusal to pay, unfair trade practices, negligence and fraud).